Good morning. My name is Kanye Levine and I represent Petitioner Appellant in this case, Don Arthur Moore. Are you retained or CJA? Pardon me? Are you retained or CJA? Retained. Okay, thank you. It's undisputed in this case that defense counsel's performance at trial in this first-degree murder case of a Vietnam veteran suffering from PTSD was in fact deficient. There's no dispute about that. And in fact the Washington courts have found that at least as to the sentencing part of the trial and your client is scheduled or will be scheduled to be resentenced, correct? Yes, yes. They found prejudice with regard to sentencing. They did not find prejudice with regard to his conviction for first-degree murder. Why don't we focus on that? Yes, yes. So I think it's most important that the court, the standard for prejudice under Strickland is whether there is a reasonable probability that the outcome of the case could have been different but for defense counsel's sufficient representation. And that is defined in the Supreme Court and in the Ninth Circuit as less than a preponderance of the evidence. You don't need a preponderance of the evidence. It's less than a preponderance of the evidence. And all you need is one juror to have found for there to have been a reasonable doubt raised in the mind of one juror. So it's not an easy standard obviously. So I, okay, we understand the standard. The question in my mind that I'd like to address is how would this evidence, and I think this is where the Washington courts came out on this, how would this evidence negate the mens rea required to commit the crime? Well, the Washington... We can't just assume that a juror would have been sympathetic and just gone into jury nullification. We have to look at this and say... We're hardly, I'm hardly arguing jury nullification. What the Deputy Commissioner of the Washington expert opinions of Dr. Gerlach, who focused on combat-related PTSD, and Dr. McClung, who was a neuropsychologist, why they were of no moment in this case was because the evidence was strong of premeditation at trial. But the fact is, and this is the biggest point here, is that the court, the Deputy Commissioner, did not consider all of the facts and did not weigh, did not even discuss in the slightest the facts at the time of trial, as well as what was presented on state collateral review, showing that there was no premeditation. And that is a violation of 2254. So what are the facts that indicate no premeditation in your view? There was quite a bit. There was, first of all, Mr. Moore claimed that this was a, he was going down there to Mr. Maloney's property to enact a citizen's arrest. And because he believed that Mr. Moore, that Mr. Maloney had stolen property from his home. And he went down there with a note that was found at the scene in his shirt pocket, which specifically read... Well, aren't you, sorry to interrupt, I do want to hear this, but isn't this just going through the sufficiency of the evidence at all to support the jury verdict? Well, that's, that's an interesting question, Your Honor, because... Because you've only raised ineffective assistance of counsel as to this mental, you know, the mental health issues that could have arisen, which we, I mean, I think we have to take that that was inefficient assistance of counsel. So doesn't it have to be those facts that would have negated it? You're, you're, you're arguing the jury just got it wrong, even without the ineffectiveness. What I'm, what I'm, what I'm arguing is, is that under 2254 D2, specifically, which deals with the issue of an unreasonable application of facts, based upon the evidence presented to the state court, we are saying that the whole reason why the state court rejected the consideration of the expert opinions was because they said they are of no moment, because we have this evidence of premeditation here, 2254 D2 expressly requires, and this circuit has, has held, that under Taylor v. Maddox, and under Kip v. Davis, that you need to set out that it's unfair. You have to set forth what those facts are, and you have to weigh them. And they didn't, the court did not do that. It's very clear. And it's completely missing, and I'm sorry, go ahead, Your Honor. You finish. What I was, all I was going to say was, I'm familiar with the Kip case. I know that, Your Honor, Judge Nelson joined the dissenters on rehearing in bank, and I believe Judge Fletcher wrote the opinion as to why it should not be reheard in bank. In fact, he might have even written the original majority opinion, I don't recall. But there seemed to be the focus there, in that, in the Kip case, seemed to be that they were trying, the dissent was pointing to, was that they were trying to shoehorn in an argument that belonged under 2254 D1, involving the unreasonable application of federal law, into a 2254 D2 claim. Which, in fact, is not the case here. Because, if I can go through the evidence, you're going to see everything they did not consider, and that, the reason why they did not consider it, is why the state court said, we're not interested in Dr. Gerlach's opinion, or Dr. McClung's opinion. I didn't want to interrupt you any further. Okay. First of all, was your client found competent to stand trial? Yes, he was. And did he decide to take the stand? Did he decide to take the stand? He did take the stand. There was absolutely no discussion, and this is laid out in Mr. Yes, he took the stand. Humor me, he decided to take the stand? Yes. And on the stand, his claim was that he acted in self-defense? Yes. In other words, his defense had nothing to do with how he got there. It had to do with what happened once he was there. Correct? He, well, no, it included, no, he... I understand your theory. Your theory is if these experts had been found by trial defense counsel, they could have put on a defense that this, the combat-induced PTSD in this man led him to believe that when he went to the scene of the crime, if you will, he believed he was lawfully engaging in a citizen's arrest. My question is, once he got there, however he got there, whatever mental impression he was laboring under, when he got there, he claimed that he acted in self-defense, that the victim would have killed him or harmed him had he not acted in the way he did. Is that correct? That is what he claimed, but we have also argued that under, and the Court of Appeals in Washington actually mentioned this in a footnote, that this evidence was not specifically, did not have to specifically apply to either a diminished capacity or an inability to meet the mens rea required of the case, but it also applied to self-defense. And we have argued that. In addressing the prejudice prong, wasn't there substantial evidence to dispute his version of what happened when he killed the victim? There was evidence, but that is exactly the point. Didn't he jerry-rig the scene? Didn't he what? Didn't he jerry-rig the scene to make it look like he was closer to the victim? That is one take on it, but the fact of the matter is, is that there was a note found on his, the issue is premeditation, and there was a second-degree murder instruction before the jury, and we've also argued how a manslaughter instruction would have, should have been given if this evidence had been presented. But the fact of the matter is there's a note found in his pocket that says he intended to make a citizen's arrest and that Bruce Maloney needed to sign this note and that signature would satisfy Moore's claim concerning the alleged theft because he had to turn over his property and get out of town. Now, is that crazy and is that reckless to go down and do that, as in manslaughter? Certainly, but that shows a lack of premeditation, and in fact, there was a jail call from Mr. Moore when he was arrested for this to an individual named Ronald Skogstad that really forms a lot of the basis of the claim of premeditation, that Mr. Skogstad, you know, out of his mouth was saying, you said you were going to kill him, these types of things, when in fact, if you look at the record, it says, he also says if he wouldn't have resisted arrest, he wouldn't have been shot. The court in the state court did not say that. They didn't mention that. Can I interrupt for a moment? In a way, I'm trying to follow up on the questions that have already been asked. The forensic evidence seems to indicate, and I don't see that it's contradicted, that Mr. Moore shot the victim from some distance as the victim was sitting in a chair. He testified, however, that the victim came at him, charging with his arms flailing. That is to say, he testified to something that was just flatly contradicted by the forensic evidence. Assuming that the jury believes the uncontradicted forensic evidence that he shot the victim from some distance, how is all the trauma, which makes him vulnerable to thinking he's under attack and so on, how is that really relevant? Because if he's some distance away when he's being shot, we're not talking about self-defense in the way that he says he was defending himself. Because the point is that it does not go to premeditation. The issue is premeditation. Second-degree murder was before the jury. And we've also argued that he should have been entitled to a manslaughter. And there's plenty of evidence to support premeditation. You're saying, however, that there's evidence that would contradict it that would have allowed the jury to go the other way. What evidence is saying that there was no premeditation? I understand there's a note in his pocket. I've got that. Anything else? I understand there's a note in his pocket about citizen's arrest. I've got that. Well, he testified that he wanted to make a citizen's arrest and that that was his right under the law. And he also indicated on the phone that if he hadn't resisted arrest, he wouldn't have been shot. But resisting arrest here with the forensic evidence would have been, I guess, he's sitting in his chair saying, you can't arrest me. I mean, not that he was attacking Mr. Moore. Well, he wasn't sitting in a chair. The claim was that he had been sort of sitting on the ground and that he then got Mr. Moore claimed he got up. And when he attacked him, he saw a spear of silver that he thought was a knife or a gun. So I'm trying to answer this question, and that is that he said also on the phone, pardon my language, I lost it, bro. I fucking exploded. That is consistent with Dr. Gerlach's opinion about combat PTSD. And that's consistent with it. And Moore's credibility when he testified suffered because there were no medical records. There were no mental health history or expert testimony supporting what he was saying because he briefly mentioned about how he was having seizures and, you know, the mental health issues he's had. And there are declarations in this case. This is the other thing that the state court did not mention, the deputy commissioner, which is very important and, again, shows you how he violated 2254 D2. There's a declaration from Robert Clardy, who in the court of appeals cited Mr. Clardy's declaration where he stated that he was totally paranoid. He believed he was a sheriff. He could not remember what he just said when he spoke. He was carrying around a sheriff's badge, and those items were found in his car. And that is consistent with frontal lobe impairment, as testified, which he had, and the medical records and the expert opinion show, with Dr. McClung's report. It's consistent with it. Dr. Gerlach stated that his ability to premeditate was impaired. She says it very clearly in her report. And I'm out of time. That's it. We'll give you a minute for rebuttal. Okay, thank you. I asked for two minutes. You asked for two. We'll split the difference. Okay, thank you. All right. All right. May it please the court, John Sampson, assistant attorney general for the respondent appellee. Is it possible to raise that? We're going to see if we can raise your profile. Exactly, counsel, so we can see you completely. Yes, your honor. It seems to be creeping up. There we go. There we go. Here comes Lazarus. You're rising in our estimation, as we speak. Well, I appreciate that. Thank you, your honor. Don't make him higher than us. That would be very � Yeah, okay. Go ahead. Thank you, your honors. May it please the court, John Sampson, assistant attorney general for the respondent appellee. The district court correctly denied relief in this case because the state court adjudication and determination that Mr. Moore had not shown prejudice from counsel's deficient performance was not an unreasonable application of clearly established federal law. In making that determination, the state court determined as a matter of law that the expert testimony proposed by Mr. Moore was not admissible because it did not satisfy the standards for admission of expert testimony to show diminished capacity. In light of that state court determination of state law, which is binding on the federal courts, the state court reasonably determined that since there would be no defense of mental health based on expert testimony, that Mr. Moore could not show a reasonable probability that counsel's failure to investigate that evidence was deficient and would have affected or, I'm sorry, would have prejudicial and would have affected the jury. So the only way for us to get around that would be to say that that decision that it was not admissible was contrary to clearly established federal law. Is that correct? That would have to be the case, that the state court's decision applying state law was in itself somehow contrary to Supreme Court precedent. And that is not simply, Mr. Moore simply cannot do that because the admissibility of evidence under state law is a matter of state law, not federal law. The Supreme Court in Estelle v. McGuire said that that is an issue of state law whether evidence is admissible or not. And the Supreme Court has repeatedly said that the federal courts may not reevaluate issues of state law and the admissibility of evidence in determining whether a constitutional error has occurred under Supreme Court precedent. Now, Mr. Moore cites two Clark v. Arizona, the U.S. Supreme Court case, and Clark v. Arnold, which discuss the differences between observational evidence of mental defects and expert testimony. And he tries to argue that the state court's decision was unreasonable because it did not allow this observational testimony to come in. There are several reasons why that argument fails. First, if you look at this court's decision in Clark v. Arnold, the court actually held that counsel's alleged deficiency was not prejudicial because even if you presented those observational evidence, the evidence still showed that the person acted with the requisite intent. In that case, in Clark, the defendant had shot and killed a police officer because he believed he was an alien from outer space. And the Ninth Circuit held that even if you showed that that truly was his delusion, that evidence would not lessen his mens rea. Can I ask, first of all, as I understand it, the reason that these were not admissible, it wasn't a defect in the experts. It was a defect in their ability to negate. The experts hadn't actually come in and negated the mental state or the mens rea, I guess, of the defendant, right? Yes, Your Honor. So under Washington law, in order to admit expert testimony regarding a person's mental health as defense, whether it goes to mens rea, whether it goes to second versus first degree murder or diminished capacity, they have to present a connection between both. And the expert testimony has to connect the mental condition, in this case, the PTSD and the drugs, et cetera, and the inability to actually form the intent. And what the Supreme Court said was the evidence before the court did not make that connection. And it has to be viewed in the light of the actual case, not just theoretically. So viewing it in the light of the actual case, that expert testimony was not sufficient. Is that the sole issue we're looking at in this case? Or is counsel, in his opening argument, has presented all this other evidence that there never was premeditation. Are we looking to that? Or are we just looking to whether the state court's decision was contrary to clearly established Supreme Court precedent? The latter, Your Honor. You're just looking at whether the state court decision was unreasonable or contrary to Supreme Court precedent. If you don't find that it was unreasonable, in other words, if no fair-minded jurist could agree with what the state court reached, then the issues of premeditation may arise in a de novo review. But to get to that de novo review, you first have to get through the barrier of 2254D, either one or two, and show that the state court decision was unreasonable. If the court did get to the issue of premeditation, I think one of the key points is premeditation does not require extensive preplanning. Premeditation simply requires that the defendant have formed the intent to kill, and then deliberated on that intent for more than a mere moment. And in this case, Mr. Moore testified to the jury that he shot the victim, Maloney, with the intent to kill him, and that he continued to shoot with the intent to kill him, and that he stabbed him with the intent to kill him, because his words were, you don't let him get up to have a second chance. So, even if, and what the Supreme Court said in referencing Dr. Gerlach's opinion and Dr. McClung's opinion, was even if you accept that he had these mental conditions that made him misperceive a potential threat by Mr. Maloney as he was going to the scene, he still acted with intent. And there's nothing in the expert reports presented to the state courts that rebuts the intent that Mr. Moore himself told the jury that he acted with. And I would like to point out, and I'm not saying that counsel was misleading at all, because his brief is clear that the excerpts of record report from Dr. McClung is the one he's trying to present in the motion to expand the record. But that expert report that's in the excerpts of record is not the report of Dr. McClung that was before the state Supreme Court. That is the one that he is trying to admit as part of an expanded record. And so, this court's evaluation of the state... What's the difference between those two reports? It's... I, in my opinion, if I was the prosecutor, I would argue there is no difference. I'm sure that Mr. Moore would argue... Doesn't that help your opponent to say there was no difference? No, Mr. Moore would likely argue that the report shows that there actually was this causal connection that is required under state law. And therefore, if this court looked at it de novo, this court would determine that this is not the case. I may have missed the point of your argument, but I thought I heard you say that the expert report that counsel is trying to get considered was not the report that the Washington courts dealt with. Is that correct? Correct. A correct statement? Well... That is correct. What's the difference between those two reports? The difference is that the newest report tries to remedy the defects that the state Supreme Court found in the reports that were before it. So, in determining whether or not the state court's decision was unreasonable, this court's review is limited to the evidence that was before the state court. So, this court cannot consider the report that's in the excerpts of record unless this court grants the motion to expand the record and first finds that the state court decision was unreasonable. So, that's the point I'm trying to make is that in reviewing... I understand. You've cleared it up. Thank you. Thank you, Your Honor. And again, I would just point out that what the state court said was, yes, Mr. Moore had some mental health issues. He had PTSD. He was on medication. He was abusing drugs. And there is psychological evidence that that may have caused him to misperceive certain events. But what they did not... What Mr. Moore did not do is then connect that evidence to his actual impairment of the ability to form intent. Because again, Mr. Moore testified to the jury that he did act with the intent to kill and that he did... If the expert reports had said... If they had tied it to the culpable mental state and the state courts had still rejected it, we wouldn't really have an opportunity... We'd still have to say that was a clear violation of Supreme Court precedent. We couldn't just say that was a violation and inconsistent with state versus go, which lays out that standard. We'd still have to find a violation of Supreme Court precedent, right? We couldn't just say it was inconsistent with state law. Correct, Your Honor. So even looking at the newest report by Dr. McClung, if the state court said this is not admissible, that is still binding on this court. And this court cannot look beyond that. The only way you could find it... Even if it was clearly and plainly contrary to state law, I suppose maybe at that point it becomes a federal... I don't know. There is an argument that has been raised in other cases in the past that if the state court is so arbitrary and it's clear that they're acting to violate the constitutional rights and so therefore making up the state law, that would be one situation. That's not what we have here. We have a state court that's applying state law and making a determination of state law and so therefore that is binding on the federal courts. Let me ask this question, if I may. He says, I just lost it, bro. I exploded. We know that he's got mental difficulties. Is it the case that someone can be in a frenzied state, intending to kill in the frenzied state, but because of the nature of the mental difficulty that it's manslaughter instead of second-degree murder? No, Your Honor. Not when the defendant is saying, I did it with intent. So to be manslaughter, it would have to be either reckless or negligent. Recklessly or negligently using more force than is necessary. And here... And let me get at the question still of intent. This may be a question that's beyond any of our capacity fully to answer. It's almost metaphysical or maybe I should say deeply, deeply psychological. Someone is in such a state that within the state he intends to do it, but he's in such an altered state that is not intent in the ordinary sense. I would then refer the court to this court's decision in Clark v. Arnold where the individual thought that the police officer was an alien from outer space. Yeah. I should have thought that actually that should have been a prosecution for killing an alien. But it was a prosecution for killing a police officer with the intent to kill a police officer. And the fact that he may have thought he was an alien-controlled police officer did not negate that he had the mens rea. And again, so to the extent that petitioner is saying, well, I could still present evidence to show I didn't have the mens rea of premeditated intent, his own testimony defeats that claim. To the extent that he tries to argue that, well, I had this intent, but it was not the right intent because I had all these mental conditions. That's when the state Supreme Court decision that you have not presented sufficient evidence to submit the diminished capacity defense comes into play. So he can present all this observational evidence, but there's nothing to tie it to the fact that that observational evidence limited his ability to form the requisite premeditated intent. Has the resentencing occurred yet? No, Your Honor. I just checked the docket yesterday and it still had not occurred yet. Has the state done anything to indicate what the position it will take on resentencing? I do not know that, Your Honor. I'm not the prosecutor. I don't know what the prosecutor's viewpoint would be. And I would say that I do sympathize with Mr. Moore. My own father was a Vietnam War combat veteran about two years before Mr. Moore. So I do have sympathy for him. And there's not as if he doesn't have a remedy. He can ask the governor for commutation, even if he doesn't get the desired result he wants in resentencing. He can still seek commutation from the governor's clemency powers. But the issue before this court is not that. The issue is whether the state court decision was unreasonable. And because he has not shown that, the district court correctly denied the petition. Okay. Thank you. Thank you, Your Honor. We'll give you a minute and a half for rebuttal. And we're going to lower the screen, right? Oh, give him two minutes. Thank you. You got it. You eked it out. Your Honor, very briefly about resentencing. No, he has not. Mr. Moore has not been resentenced because he wanted to have the court system play out here first. And the fact of the matter is, while the state court found prejudice and he is entitled to be resentenced, that was a pyrrhic victory of sorts. He's 75 years old now. And the mandatory minimum for first-degree murder is 20 years. Plus he also has a firearm and deadly weapon enhancements. Basically, I calculated it out. If he got an exceptional sentence downward, the best he could do would be released when he's 92 instead of 97. Moving on from that, respondents, Mr. Sampson's argument, and really almost the entire discussion here was about intent, intent. His testimony said intent. The issue is premeditated intent. And we have shown that if you look at Dr. Gerlach's ultimate conclusion in her report, it states, she has a long report about PTSD and her qualifications are impeccable. For this reason, it is important to consider the combined impact of his complicated medication schedule, which included morphine and Zoloft, as well as the abuse of recreational drugs at the time, with medication that interact with each other and with alcohol, his diminishing health and his PTSD. These all contributed to his altered mental state in the weeks leading up to of premeditated murder for which he was convicted. So there is this connection. There was no discussion by Mr. Sampson. Now you've used up even the extended time. So I know it goes quickly, doesn't it? But we appreciate the arguments by both counsel. We have your arguments on the briefs as well. And the case has now been submitted. The court is going to take a five-minute recess.
judges: HAWKINS, FLETCHER, NELSON